

*Suffolk Superior Civil # 05-869 BLS*

FILED
IN CLERKS OFFICE FILED

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

2005 MAR 10 P 3: 27

U.S. DISTRICT COURT
DISTRICT OF MASS.

BRIAN J. KELLY,

        Plaintiff,

v.

MAX HUGEL,

        Defendant.    |    Civil Action No.:

and

ROCKINGHAM VENTURE, INC.,

        Defendant, and
        Reach-and-Apply
        Defendant,

CLERK / MAGISTRATE
MICHAEL JOSEPH DONOVAN
SUPERIOR COURT - CIVIL

MAR 10 2005

RECEIVED

**05 - 10460 DPW**

## NOTICE OF REMOVAL

    **TO:**   The Honorable Judges of the United States District Court for the District of Massachusetts:

    1.    The Petitioner, Max Hugel, respectfully shows that he is a named defendant, as captioned above, in an action brought by the Plaintiff, Brian J. Kelly, which is now pending in the Suffolk Superior Court, Suffolk County, Massachusetts, Civil Action No. 05-0869-BLS.

    2.    The above-named civil action pending in the Suffolk Superior Court was filed on or about March 7, 2005. Attached as Exhibit A is a copy of the Court date-stamped Verified Complaint.

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS

SUPERIOR COURT CIVIL
ACTION NO.

05-0869-*13<5*

| | |
|---|---|
| BRIAN J. KELLY | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MAX HUGEL, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| ROCKINGHAM VENTURE, INC., | ) |
| | ) |
| Defendant and | ) |
| Reach-and-Apply | ) |
| Defendant. | ) |

SUFFOLK SUPERIOR COURT
CIVIL CLERK'S OFFICE

2005 MAR -7 P 1: 29

MICHAEL JOSEPH DONOVAN
CLERK/MAGISTRATE

## <u>VERIFIED COMPLAINT</u>

This is an action to recover the principal amount of $5,000,000, with interest, late charges and attorneys' fees, owed to the plaintiff under a promissory note, and to enforce certain of the plaintiff's rights under a stock pledge agreement. (As of March 1, 2005, the balance with interest and late charges was $7,000,273.97, with a per diem thereafter of $1,643.84.) The plaintiff also seeks to reach and apply stock of the defendant, and seeks other related relief.

### <u>Allegations Common To All Counts</u>

### <u>Parties</u>

1.      The plaintiff Brian J. Kelly ("Kelly") resides at 55 Sandy Pond Road, Lincoln, Massachusetts 01773, and has a principal place of business at 120 Presidential Way, Suite 300, Woburn, Massachusetts 01801.

00055137.DOC /

2.      The defendant Max Hugel resides at 18 Home Road, Windham, New Hampshire 03087.

3.      The defendant Rockingham Venture, Inc. ("Rockingham Venture") is a New Hampshire corporation with a principal place of business at 77 Rockingham Park Boulevard, Salem, New Hampshire 03079.  Upon information and belief, the defendant owns stock in Rockingham Venture.

### Jurisdiction and Venue

4.      Jurisdiction and venue are proper in this Court because the Note at issue was entered into in Boston, Massachusetts and the Stock Pledge Agreement, which also forms the basis for this action, specifically provides that the parties submit to the jurisdiction of the courts of the Commonwealth of Massachusetts, and waive any and all objections to venue in any of the courts of the Commonwealth.

### Count I – Breach Of A Promissory Note Against Hugel

5.      Kelly repeats and realleges the allegations of Paragraphs 1 through 4 of the Complaint.

6.      On or about December 29, 2000, Hugel executed and delivered to Kelly a Promissory Note (the "Note") in the principal amount of $5,000,000.  Pursuant to the Note, Hugel promised, for consideration and under seal, to pay Kelly the balance of the loan amount, with interest and costs of collection, including reasonable attorneys' fees and expenses, all as more particularly set forth in the Note.  (A true copy of the Note is attached as Exhibit A.)

7.      Hugel has failed and refused to repay the balance under the Note according to the terms of the Note, which called for repayment nine months after Kelly waived his conversion option under the Note.  On November 24, 2003, Kelly gave written notice of such waiver.  Thus, the Note became due and payable on August 24, 2004.  As a result of Hugel's failure and refusal

00055137.DOC /                                         2

to make payment, the Note is in default and Hugel owes Kelly $5,000,000, plus interest and other sums required to be paid under the Note, including costs of collection and reasonable attorneys' fees and expenses.

8.    Kelly has fully performed his obligations under the Note, and all conditions precedent to payment have been performed or have occurred.

## Count II – Breach of Contract Under A Stock Pledge Agreement Against Both Defendants

9.    Kelly repeats and realleges the allegations of Paragraphs 1 through 8 of the Complaint.

10.    On or about December 29, 2000, Hugel, Kelly and Rockingham Venture entered into a Stock Pledge Agreement (a true copy of which is attached as Exhibit B) pursuant to which Hugel pledged forty (40) shares of common stock of Rockingham Venture, representing twenty (20%) percent of the issued and outstanding capital stock of Rockingham Venture, and fifty (50%) of the eighty shares of the Rockingham Venture stock that Hugel owned.

11.    Pursuant to § 10(a) of the Stock Pledge Agreement, "[t]he occurrence of any event of default under the Note continuing after the applicable grace period," among other events, constitutes an "Event of Default." Pursuant to the Acknowledgement of Pledge contained in the Stock Pledge Agreement, Rockingham Venture promised that "after receipt by Rockingham Venture, Inc. of a notice that an Event of Default has occurred," it "shall pay to Lender [Kelly] any dividends or other distributions payable with respect to the Collateral."

12.    Kelly loaned Hugel $5,000,000 under the Note. This amount was due to be paid on August 24, 2004 in accordance with the terms and conditions of the Note.

13.    Hugel failed to repay the balance under the Note when due. Under the Note, the entire amount Kelly advanced to Hugel became immediately due and payable on August 24, 2004. The Note is thus in default and consequently the Note, including the principal balance

00055137.DOC /

WHEREFORE, the plaintiff Brian J. Kelly requests that this Court grant the following relief:

### A.     Monetary relief

1.     On Counts I and II, enter judgment against the defendant Max Hugel, for a total amount of $6,977,260.08, together with interest, default interest, costs and reasonable attorneys' fees.

2.     On Count II, enter judgment against Rockingham Venture in the amount of the dividends or distributions due to Kelly under the Stock Pledge Agreement.

### B.     Pre-judgment relief

3.     Preliminarily enjoin Hugel, his agents, employees, servants, and attorneys, from selling, alienating, transferring, conveying, hypothecating, destroying, dissipating, pledging, spending, encumbering, assigning, or otherwise disposing of any and all property or assets, tangible or intangible (including but not limited to money), owned directly, or indirectly, or beneficially by Hugel, providing that nothing in this order shall prevent the expenditure of up to $5,000 a month plus such sums as are necessary for Hugel to pay his taxes.

4.     On Count III, preliminarily enjoin the defendant Max Hugel, his agents, servants, employees and attorneys, from transferring, alienating, selling conveying, encumbering, hypothecating, destroying, assigning , dissipating, pledging , or otherwise disposing of his shares in Rockingham Venture.

5.     On Count III, enter a preliminary injunction ordering the defendant, his agents, servants, employees and attorneys, forthwith to tender the balance of Hugel's shares of Rockingham Venture to the plaintiff's attorneys, to be held as security for all sums adjudged to be owed by Hugel to Kelly.

00055137.DOC /

6

Agreement, and to provide Kelly such material information as and when it makes such information available to its stockholders, including but not limited to Hugel.

**D.    General Prayer For Relief**

Under all counts, grant the plaintiff his damages, costs, interest, and attorneys' fees, and such other and further relief as the Court deems meet and just.

HEREBY ATTEST AND CERTIFY ON
MARCH 14, 2005, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

ASSISTANT CLERK

BRIAN J. KELLY
By his attorneys,

Christopher A. Kenney, BBO#556511
Thomas Paul Gorman, BBO#204100
Sherin and Lodgen LLP
101 Federal Street
Boston, MA 02110
(617) 646-2000
(617) 646-2222 (fax)

Dated: March 7, 2005

SUFFOLK, ss.    SUPERIOR COURT DEPT.
(date) March 7, 2005
Notice ordered issued hereon returnable
at the BLS '2' Session, Courtroom 20, 12th floor
on Friday, March 11, 2005, at 2:30 pm
to show cause why Prayers 3-11
should not be granted
By the Court, ( Burnes , J.)
ATTEST:
Claire A Walsh
Assistant Clerk

Summons and order
of notice issued.

00055137.DOC /

8

## VERIFICATION

I, Brian J. Kelly, have read the Complaint and, on my oath, affirm that the allegations made in the Complaint are true and that those allegations made on information and belief, I believe to be true.

Brian J. Kelly

00055137.DOC /

9

# PROMISSORY NOTE

$5,000,000.00

Boston, Massachusetts
December 29, 2000

FOR VALUE RECEIVED, the undersigned Max Hugel, having an address of 18 Home Road, Windham, New Hampshire 03087 (the "Borrower") promises to pay to the order of Brian J. Kelly, having an address at c/o Eastern Development, LLC, 120 Presidential Way, Suite 300, Woburn, Massachusetts 01801 (hereinafter, with any subsequent holder, the "Lender"), the principal sum of

## FIVE MILLION DOLLARS ($5,000,000.00),

with interest on the unpaid principal balance at a rate of twelve percent (12%) per annum (non-compounding) payable as provided herein.  Payments under this Note shall be made as follows: (i) payments on account of interest only in the amount of Fifty-Six Thousand Two Hundred and Fifty Dollars ($56,250.00) shall be made during the term of this Note quarterly in advance commencing on the date hereof, and (ii) the outstanding principal balance together with all unpaid interest thereon shall be due and payable in full on December 29, 2003 (the "Original Maturity Date").  If Lender shall (a) not have exercised its conversion option set forth below on or before the Original Maturity Date or such earlier date as established pursuant to the third paragraph of this Note or (b) prior to the Original Maturity Date irrevocably waive its conversion option, the maturity date of this Note shall be extended to the date which is nine (9) months after the earlier of the Original Maturity Date or the date of said waiver provided that in no event shall the maturity date of this Note be earlier than the Original Maturity Date.  Any payments received by the Lender from the undersigned will be applied first to any costs, expenses or charges then owed to the Lender by the undersigned, second to any accrued and unpaid interest, and third to the unpaid principal balance of this Note.

At the Lender's option, the Lender may, upon the terms hereafter set forth (but subject to the restrictions set forth in the seventh paragraph hereof), convert the entire principal balance of this Note and any accrued deferred interest thereon into twenty-five percent (25%) of the stock of Borrower in Rockingham Venture, Inc., (which stock owned by Borrower shall be at least 80 shares).  In the event of such conversion, the Lender agrees to hold such stock in such a manner as shall not result in the loss of the Subchapter "S" status of Rockingham Venture, Inc. provided that stock held in the name of an individual shall satisfy such requirement.

Lender shall exercise such conversion right by giving notice thereof to Borrower on or before the Original Maturity Date or, if earlier, within 30 days after receipt of notice of the amount of any distribution pursuant to the last sentence of Section 8 of the Stock Pledge Agreement hereafter referred to which would result in payment in full of this Note (and all other obligations hereunder and under the Stock Pledge Agreement) and filing with the New Hampshire Pari-Mutuel Commission and Attorney General the information required with respect

to the holder of ten percent (10%) or more of the interest in a license holder pursuant to Section 284:15-b of the New Hampshire Revised Statutes. If, within 100 days after such notification and filing, no notification has been received by Borrower or Lender from the New Hampshire Pari-Mutuel Commission or Attorney General to the effect that Lender is not fit to be associated with racing in the State of New Hampshire, such conversion shall become effective and Borrower shall take such action as is necessary to reflect the transfer of such stock on the books of Rockingham Venture, Inc. provided that Lender shall be entitled to receive all dividends and distributions payable from and after the date of exercise (or if such exercise is made within thirty (30) days after notice of the amount of any distribution from a transaction described in Section 8 of the Stock Pledge Agreement, from and after the date of such transaction) and, to the extent Borrower has received the same, it shall promptly pay the same over to Lender. In the event such a notice is received to the effect that Lender is not fit to be associated with racing in New Hampshire, the maturity date of this Note shall be extended to the date which is nine months after receipt of such notice (if such extended date would be beyond the Original Maturity Date).

The Lender's computation of amounts outstanding hereunder from time to time shall be final, conclusive and binding for all purposes, absent manifest error.

If any installment to be made hereunder is not paid when due, then and without limiting the holder's rights by reason of such default, the Borrower shall pay a late fee equal to five percent (5%) of such installment.

The undersigned may not prepay this Note in whole or in part at any time unless (a) Lender shall have voluntarily assigned this Note (including an assignment pursuant to the seventh paragraph hereof) prior to an Event of Default (as hereafter defined) and such prepayment is made prior to the exercise of Lender's conversion option, (b) the provisions of the seventh paragraph of this Note become applicable, or (c) Lender shall have irrevocably waived or failed to timely exercise its conversion option. If this Note (and all other sums due hereunder or under the Stock Pledge Agreement hereafter referred to) shall be prepaid in full pursuant to clauses (a) or (b), Lender's conversion option (unless previously exercised) shall terminate and Lender shall promptly return the shares pledged under the Stock Pledge Agreement.

If Lender is required to qualify or be found suitable under any applicable gaming law, regulation or rule and does not so qualify or otherwise does not meet the suitability standards pursuant to any applicable gaming law, regulation or rule, the Lender shall and hereby agrees to sell this Note to a suitable holder or holders (the "Substitute Holder") that assume(s) and accept(s) the rights and obligations of the Lender. If the Lender fails to sell this Note to a Substitute Holder within thirty (30) days of being determined unsuitable or unqualified, or such lesser period of time as specified by any applicable gaming law, regulation or rule, the Borrower may designate a Substitute Holder who would acquire the Loan upon payment of all principal, interest (at 12% per annum), reasonable late fees and costs of collection with respect to this Note within an additional thirty (30) day period, or such lesser period of time as specified by an applicable gaming law, regulation or rule, or may, at its election upon written notice to the Lender, immediately redeem this Note by payment of all principal, interest (at 12% per annum)

2

$\mathcal{L}$

# STOCK PLEDGE AGREEMENT

This Stock Pledge Agreement made as of this 29th day of December, 2000, by and among Max Hugel, with a principal address of 18 Horne Road, Windham, New Hampshire 03087 (the "Pledgor"), and Brian J. Kelly (the "Pledgee").

In consideration of loans, advances and financial accommodations to be made by the Pledgee in favor of the Pledgor (the "Pledgor"), all as provided in a certain Promissory Note of even date herewith issued by the Pledgor in favor of the Pledgee in the original principal amount of $5,000,000.00 (any such agreement or note in effect from time to time being hereinafter referred to as the "Note"), it is hereby agreed as follows:

1.    Grant of Security Interest. As security for all obligations of the Pledgor to the Pledgee described in Section 2 below, the Pledgor hereby delivers and pledges to the Pledgee, and grants to the Pledgee a first priority security interest in and lien on forty (40) shares of Common Stock of Rockingham Venture, Inc. ("Rockingham Venture") owned of record and beneficially by the Pledgor, representing twenty percent (20%) of the issued and outstanding capital stock of Rockingham Venture as of the date hereof together with any additional shares pledged pursuant to Section 2, and all dividends, interest, distributions, accessions, additions and substitutions for, to or on any of the foregoing, all rights to enforce such rights, and the proceeds and products of all the foregoing (collectively, the "Collateral"). All stock certificates representing the original Collateral have been duly endorsed or are accompanied by stock powers duly executed in blank by the Pledgor as the registered owner of such stock certificates or bonds.

2.    Obligations Secured. The Collateral from time to time held hereunder shall secure the payment, observance and performance of all liabilities and obligations of Pledgor to Pledgee, whether direct or indirect, absolute or contingent, secured or unsecured, due or to become due, primary or secondary, now existing or hereafter arising or acquired, whether or not arising under this Agreement or evidenced by any writing, including any and all Obligations of the Pledgor, all as defined in and pursuant to the Note (collectively, the "Obligations"). The Obligations of the Pledgor hereunder shall be fully recourse to the Pledgor, individually, provided that, in the event of the delivery and pledge by Pledgor to the Pledgee of twenty (20) additional shares of Common Stock of Rockingham Venture, representing an additional twenty-five percent (25%) of the stock of Rockingham Venture owned by Borrower together with a consent from Bank of New Hampshire and/or the holder of any other instrument restricting the transfer of such shares (except Harrah's Entertainment, Inc.), original stock certificates and blank stock power(s) on or before March 31, 2001, the Obligations of the Pledgor hereunder and under the Note shall cease to be with full recourse to the Pledgor and shall thereafter be non-recourse to the Pledgor, except in the case of fraud by Pledgor, any willful breach by Pledgor of the obligations hereunder or any breach of any representation or warranty made hereunder provided that such non-recourse provision shall not be applicable if (i) the New Hampshire Pari-Mutuel Commission or New Hampshire Attorney General determines that Lender (or proposed transferee hereunder) is not fit to be associated with racing in the State of New Hampshire pursuant to the provisions hereof or pursuant to the conversion provisions of the Note; or (ii) the provisions of the seventh paragraph of the Note become applicable.

3.    <u>Holding the Collateral</u>.  The Pledgee shall hold such stock certificates and any other Collateral as security for the obligations of the Pledgor under the Note and shall not encumber, dispose of, or release the Collateral except in accordance with the terms and provisions of this Agreement.

4.    <u>Representations and Warranties</u>.  The Pledgor hereby represents and warrants to the Pledgee that:

(a)    <u>Title to Stock</u>.  Except as disclosed in the Disclosure Schedule, the Pledgor is the record owner of and has good, marketable and absolute title to 80 shares of stock of Rockingham Venture (which includes all of the Collateral), free and clear of any claim, pledge, lien, security interest, restriction or other encumbrance of any nature whatsoever, except to or in favor of the Pledgee hereunder.  There are 200 shares of stock of Rockingham Venture outstanding.

(b)    <u>Title to Assets</u>.  Rockingham Venture is the record owners of and have good, marketable and absolute title to all of its assets, including, without limitation, the Rockingham Park Race Track located at Rockingham Park Boulevard, Rockingham County, Salem, New Hampshire (the "Rockingham Race Track"), the pari-mutuel license therefor and all other real and personal property, free and clear of any claims, pledges, liens, security interests or other encumbrance of any nature whatsoever ("Liens"), except as set forth on the Disclosure Schedule attached hereto.

(c)    <u>No Violation, etc.</u>  Neither the execution and delivery of this Agreement nor the consummation of the transactions herein contemplated nor compliance with the terms, conditions and provisions hereof will, except as set forth in the Disclosure Schedule (i) violate, conflict with or result in a breach of any of the terms, conditions or provisions of the charter or the bylaws of Rockingham Venture, as amended, or (ii) require any consent, approval, authorization, or permit of, or filing with or notification to any governmental or regulatory authority, or any other person, (iii) violate any regulation, order, writ, injunction or decree of any court or governmental instrumentality or any law, (iv) violate, conflict with or result in the acceleration or termination of any agreement or instrument to which Pledgor or Rockingham Venture are a party or by which the Pledgor or Rockingham Venture's properties are bound or to which Pledgor or Rockingham Venture or any of its properties are subject, or (v) constitute a default hereunder or result in the creation or imposition of any Lien.

(d)    <u>Compliance with Law</u>.  Except as set forth on the Disclosure Schedule, the Pledgor and Rockingham Venture is now, and has been within the past five years, in compliance with all federal and state laws.  Pledgor has provided to Pledgee the environmental audits, site assessments and investigations with respect to the Rockingham Park Race Track, listed on the Disclosure Schedule (collectively, the Environmental Reports").  Except as disclosed on the Disclosure Schedule, and,

2

to Pledgor's best knowledge, Rockingham Venture has implemented all recommendations of the consultants contained in each of the reports, have remediated all identified contamination in accordance with the Environmental Laws, are in full compliance with Environmental Laws and has maintained all Hazardous Substances in compliance with all Environmental Laws. As herein defined, the term "Environmental Laws" means any federal, state or local law (including any statute, rule, regulation, ordinance, code or rule of common law), and any judicial or administrative interpretation thereof, and any decree, judgment, policy, written guidance or judicial or administrative order relating to the environment, health, safety, or Hazardous Substances, including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9901 et seq., the Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6901 et seq., the Emergency Planning and Community Right-to-Know Act, 42 U.S.C. § 11001 et seq., the Clean Air Act, 42 U.S.C. § 7401 et seq., the Federal Water Pollution Control Act, 33 U.S.C. §1251 et seq., the Toxic Substance Control Act, 15 U.S.C. § 2601 et seq., the Safe Drinking Water Act, U.S.C. § 300f et seq., the Occupational Safety and Health Act, 42 U.S.C. § 1801 et seq., the Federal Insecticide, Fungicide and Rodenticide Act, 7 U.S.C. § 136 et seq., the Hazardous Materials Transportation Act, 49 U.S.C. § 1801 et seq., and their state counterparts or equivalents, all as amended, and any regulations or rules adopted or publications promulgated pursuant thereto.

"Hazardous Substances," as used herein means, collectively, any contaminant; pollutant; toxic, radioactive or hazardous waste, chemical, substance, material and constituent; asbestos; polychlorinated biphenyls (PCBs); paint containing lead or mercury; urea formaldehyde; natural or liquefied gas; flammable, explosive, corrosive, medical and infectious waste; and oil or other petroleum product, all as defined in Environmental Laws.

(e)     No Litigation.  There are no actions, suits, proceedings, hearings or investigations currently pending or, to the knowledge of Pledgor, threatened against Pledgor or Rockingham Venture by any federal, state, local or foreign government or any subdivision, agency, instrumentality, authority, department, commission, board or bureau thereof of any federal, state, local or foreign court, tribunal or arbitrator.

(f)     No Proceedings.  Except as set forth on the Disclosure Schedule attached hereto, there are no actions, suits or proceedings including, without limitation, any proceeding in the nature of bankruptcy or for reorganization or arrangement or investigation at law or in equity or before any court or public board or body, contemplated by or pending or threatened against the Pledgor or Rockingham Venture or to the knowledge of the Pledgor any basis therefor, wherein an unfavorable decision, ruling or finding would in any material respect adversely affect the validity or enforceability of this Agreement or the condition (financial or otherwise) of Rockingham Venture or the ability of the Pledgor to meet any of

3

the Obligations. Neither the Pledgor nor Rockingham Venture is in default with respect to any order, writ, injunction or decree.

(g)    Financial Statements. Attached to the Disclosure Schedule are the compiled financial statements of Rockingham Venture as of September 30, 2000, December 31, 1999, December 31, 1998, December 31, 1997, December 31, 1996 and December 31, 1995 (the "Financial Statements"). The Financial Statements are complete and correct in all material respects and fairly present the financial condition of Rockingham Venture as of the dates indicated and for the periods involved and show all material liabilities, direct and contingent, of Rockingham Venture. As of September 30, 2000, there were no contingent liabilities, liabilities for taxes, unusual forward or long-term commitments or unrealized or anticipated losses, except as referred to or reflected or provided for in said Financial Statements. The Financial Statements are in accordance with the books and records of Rockingham Venture and have been prepared in accordance with generally accepted accounting principles applied on a consistent basis throughout the periods indicated on the Financial Statements. Since September 30, 2000, there has been no material adverse change in the business condition or operations of Rockingham Venture.

5.    Covenants.

(a)    The Pledgor covenants and agrees that it will promptly give the Pledgee written notice of (i) any litigation, arbitration or administrative proceeding to which the Pledgor or Rockingham Venture may hereafter become a party which may involve any risk of any material judgment or liability not fully covered by insurance or which otherwise may result in any material adverse change in the assets or in the condition, financial or otherwise, or prospects of Rockingham Venture, or the Pledgor's or Rockingham Venture' net worth, or (ii) the revocation, termination, non-renewal or cancellation of any license, permit, consent or approval binding upon or otherwise affecting Rockingham Venture or of any material contract or agreement to which Rockingham Venture are a party or by which they are bound;

(b)    The Pledgor shall pay all taxes, assessments and other charges which may be levied or assessed against the Collateral from time to time;

(c)    The Pledgor shall promptly notify in writing of any change in the Pledgor's address as specified above or Rockingham Venture's address;

(d)    The Pledgor shall defend the Collateral against any and all claims and demands of all third parties; and

(e)    The Pledgor shall provide to the Pledgee such assurances as may be required by the Pledgor to establish, preserve, perfect and protect the Pledgee's first and priority security interest in the Collateral.

4

(f)     The Pledgor shall promptly give Pledgee copies of any written information and written notice of any material oral information received by him with respect to Rockingham Venture.

6.     <u>Issuance or Sale of Collateral</u>.  The Pledgor hereby covenants and agrees that, except as consented to by the Pledgee in writing, the Pledgor will not directly or indirectly sell, assign, pledge or otherwise encumber (other than any restrictions as contemplated pursuant to the documents referred to in the December 21, 1999 letter referenced in Section 8 hereof) or dispose of the Collateral or any other stock in Rockingham Venture owned by Pledgor or any interest therein.

7.     <u>Voting Rights of the Pledgor</u>.  Provided that no Event of Default (as hereinafter defined) shall have occurred and be continuing, for so long as the Pledgor shall be the record owner of the Collateral, the Pledgor shall be entitled, to the extent permitted by applicable law, to exercise voting power with respect to the Collateral; provided, however, that in no event shall the Pledgor exercise such voting power in any manner contrary to or inconsistent with the terms hereof or with the terms of the Note and, in the event of the sale of any capital assets or the issuance of any stock, Pledgor shall vote all of its shares in favor of the distribution of any available proceeds thereof.

8.     <u>Distribution on Liquidation; Stock Dividends, Etc</u>.  Upon the dissolution, winding up, liquidation or reorganization of the Borrower whether in bankruptcy, insolvency or receivership proceedings, or upon an assignment for the benefit of creditors or otherwise, except as expressly permitted by the Note, any sum to be paid or any property to be distributed upon or with respect to the Collateral shall be paid over to the Pledgee to be held by it as collateral security for the Obligations.  In the event that any stock dividend shall be declared on any of the Collateral, or any shares of stock or fractions thereof shall be issued pursuant to any stock split involving any of the Collateral, or any distribution of capital shall be made on any of the Collateral, or any property of any kind shall be distributed upon or with respect to any of the Collateral pursuant to any recapitalization, reclassification, merger, consolidation, or reorganization of the capital of the issuing corporation, the shares or other property so distributed shall be delivered to the Pledgee, to be held by the Pledgee as part of the Collateral.  In the event of any distribution with respect to the Stockholders of Rockingham Venture resulting from the sale of any assets of Rockingham Venture, 25% of the amount thereof received by Pledgor shall be paid to Lender and applied to payments on the Note (other than installment interest payments) provided that any distributions resulting from a transaction with Harrah's Entertainment, Inc. or its affiliates on the terms of a letter from Daniel Callaghan to Harrah's Entertainment, Inc. dated December 21, 1999 may be retained by Lender only if Lender exercises its option to convert pursuant to the Note within 30 days after receipt of notice of the amount of any such distribution. If there is to be any distribution to the Pledgor, twenty-five percent (25%) of which would result in payment in full of the Note (and all other obligations of Pledgor under the Note and hereunder), written notice of such distribution must be given to the Pledgee prior to such distribution.

9.     <u>Dividends, Voting Rights, Etc. on Default</u>.  If an Event of Default shall occur and be continuing, the Pledgee, shall be entitled to receive and retain as collateral security for the

5

bankruptcy or insolvency laws by or against Pledgor or any endorser, guarantor or surety of or for any Obligation;

Then upon the occurrence of any such Event of Default or at any time or times thereafter, unless such Event of Default shall have been waived in writing by the Pledgee, the Pledgee shall have all of the rights and remedies of a secured party under the Uniform Commercial Code of Massachusetts and shall have full power and authority to release the Collateral from escrow, to sell or otherwise dispose of the Collateral or any portion thereof, and to vote any of the Collateral with respect to any and all matters. Any such sale or other disposition, subject to the provisions of applicable law, may be by public or private proceedings and may be made by one or more contracts, as a unit or in parcels, at such time and place, by such method, in such manner and on such terms as the Pledgee may determine. Except as required by law, such sale or other disposition may be made without advertisement or notice of any kind or to any person. Where reasonable notification of the time or place of such sale or other disposition is required by law, such requirement shall have been met if such notice is telegraphed, cabled or mailed, postage prepaid, at least five (5) days before the time of such sale or other disposition to each person entitled thereto at each such person's address (which in the case of Pledgor is as specified in Section 17 below). The Pledgee or any other holder of the Obligations may buy any or all of the Collateral upon any sale thereof, and upon any such sale or sales, the Collateral so purchased shall be held by the purchaser absolutely free from any claims or rights of whatsoever kind or nature, including any equity of redemption or any similar rights; all such equity of redemption and any similar rights being hereby expressly waived and released by the Pledgor to the extent permitted by applicable law. In the event any consent, approval or authorization of any governmental agency shall be necessary to effectuate any such sale or sales, the Pledgor shall execute, as necessary, all applications or other instruments as may be required. After deducting all reasonable costs and expenses of collection, custody, sale or other disposition or delivery (including legal costs and reasonable attorneys' fees) and all other charges due with respect to the Collateral (including any charges of the type described in Section 12 below), the residue of the proceeds of any such sale or other disposition shall be applied to the payment of the Obligations in such order of priorities as is determined at the time by the Pledgee except as otherwise provided by law or directed by any court purporting to have jurisdiction thereof, and any surplus shall be returned to the Pledgor, except as otherwise provided by law. The Pledgor shall be liable for any deficiency.

The Pledgor recognizes that it may not be possible or feasible for Pledgee to effect a public sale of all or a part of the Collateral by reason of certain registration or filing requirements contained in the Securities Act of 1933, as amended, or applicable state securities laws, and that Pledgee may be compelled to resort to one or more private sales to a restricted group of purchasers who will be obliged to agree, among other things, to acquire such Collateral for their own account for investment and not with a view to the distribution or resale thereof.

7

The Pledgor agrees that private sales so made may be at a price and on other terms less favorable to the seller than if such Collateral were sold at public sales, and that the Pledgee has no obligation to delay the sale of any such Collateral for the period of time necessary to permit the same to be registered for public sale under the Securities Act of 1933 or any applicable state securities laws. The Pledgor further agrees that sales made under the foregoing circumstances shall not be deemed to have been made in a commercially unreasonable manner by virtue of any sale being made on terms less favorable to the seller than a public sale due to the private nature of the sale. Subject to the foregoing, the Pledgee agrees that any sale of the Collateral made by the Pledgee shall be made in a commercially reasonable manner.

Notwithstanding the foregoing, prior to Lender or any purchaser of the Collateral becoming a stockholder of the Company (as opposed to exercising any other rights hereunder including, without limitation, collection of any dividends or other distributions made with respect to the Collateral) Lender, or such purchaser, shall file with the New Hampshire Pari-Mutuel Commission and Attorney General the information required with respect to the holder of ten percent (10%) or more of the interest in a license holder pursuant to Section 284:15-b of the New Hampshire Revised Statutes. If, within 100 days after such notification and filing, no notification has been received by Lender (or such purchaser) from the New Hampshire Pari-Mutuel Commission or Attorney General to the effect that Lender (or such purchaser) is not fit to be associated with racing in the State of New Hampshire, Lender (or such purchaser) may take such action as it deems appropriate to transfer the Collateral into its name on the books of Rockingham Venture, Inc.

11.    Transfer of Pledged Stock and Other Collateral. Subject to the last paragraph of Section 10 hereof, the Pledgor hereby irrevocably appoints the Pledgee as agent of the Pledgor to arrange for any and all transfers of the Collateral as the Pledgee may from time to time deem advisable to assist the Pledgee in obtaining the benefit of the Pledgee's security interest therein, including, but not limited to, the transfer of the Collateral (or any registered bonds or other securities pledged hereunder) into the name of the Pledgee or its nominee at any time, the foregoing appointment being deemed a power coupled with an interest.

12.    Payment of Taxes, Charges, Etc. The Pledgee, at its option, may discharge any taxes, charges, assessments, security interests, liens or other encumbrances upon the Collateral and otherwise take such actions. All such expenditures incurred by the Pledgee shall become payable by the Pledgor to the Pledgee upon demand, shall bear interest at a rate per annum which shall at all times be equal to the Prime Rate of Fleet Bank as announced from time to time as its Prime Rate plus five percent (5%) per annum from the date incurred to the date of payment, and shall be secured by the Collateral.

13.    Duties with Respect to Collateral. The Pledgee shall have no duty to the Pledgor with respect to the Collateral other than the duty to use reasonable care in the safe custody of any Collateral in its possession. Without limiting the generality of the foregoing, the Pledgee,

8

although it may do so at its option, shall be under no obligation to the Pledgor to take any steps necessary to preserve rights in the Collateral against other parties.

14.     Pledgee's Rights and Remedies Not Exclusive. All of the Pledgee's rights and remedies on the Obligations or the Collateral, whether evidenced hereby or by any other agreement, instrument or paper, shall be cumulative and may be exercised singly or concurrently, and nothing herein shall be deemed to limit in any way any rights the Pledgee might otherwise have under any other instrument or by law, including, without limiting the generality thereof, the right to negotiate any note or other instrument together with any collateral specifically described therein.

15.     Waivers by Pledgor. The Pledgor (a) waives presentment, notice, protest, notice of acceptance of this Agreement, notice of any loans made, extensions granted, collateral received or delivered or other action taken in reliance hereon and all demands and notices of every kind in connection with the delivery, acceptance, performance, default or enforcement of this Agreement, the Collateral or the Obligations, including without limitation any and all rights to judicial hearing in advance of the enforcement of any of the Pledgee's rights hereunder, (b) assents to any one or more renewals, extensions or postponements of the time of payment of any of the Obligations or any other indulgence with respect thereto, to any acquisition, substitution, exchange or release of collateral therefor and to the addition or release of any person primarily or secondarily liable thereon, to the acceptance of partial payment and the settlement, compromise, adjustment or discharge of any thereof, all in such manner and at such time or times as Pledgee may deem advisable, (c) agrees to the provisions of any instrument, security or other writing evidencing any of the Obligations, and (d) shall not assert any right arising from the discharge of any of the Obligations through realization upon Collateral or from other payment or performance hereunder until all of the Obligations shall have been paid, performed and fulfilled.

16.     Termination. The obligations of the Pledgor under this Agreement shall continue regardless of any reduction or increase in the Obligations until all Collateral has been either applied thereto or returned to the Pledgor. The Pledgee shall release the Collateral from escrow and return such Collateral to the Pledgor promptly after the payment in full of all Obligations.

17.     Notices. All notices and other communications hereunder shall be deemed to have been sufficiently given when mailed, postage prepaid by certified or registered mail, return receipt requested, or when sent by overnight delivery service with provision for acknowledgement of receipt

if to the Pledgee, to:          Brian J. Kelly
                                c/o Eastern Development, LLC
                                120 Presidential Way, Suite 300
                                Woburn, Massachusetts 01801
                                Attn: Thomas A. Maher

with a copy to:                 Frederick J. Pittaro, Esquire
                                Mintz, Levin, Cohn, Ferris,

9

Glovsky & Popeo
One Financial Center
Boston, Massachusetts 02111

if to the Pledgor, to:        Max Hugel
18 Horne Road
Windham, New Hampshire 03087

or at such other address as the party to whom such notice or demand is directed may have
designated in writing to the other party hereto in the manner provided above.

18.    Rights. Amendments and Waivers.  No course of dealing between the Pledgor and
the Pledgee, nor any delay in exercising, on the part of the Pledgee, any right, power or privilege
hereunder, shall operate as a waiver thereof; nor shall any single or partial exercise of any right,
power or privilege hereunder preclude any other or further exercise thereof or the exercise of any
other right, power or privilege.  Pledgee may exercise its rights with respect to the Collateral
without resorting or regard to other collateral or sources of reimbursement for the Obligations.
No consent or waiver of any provision of this Agreement or of any of the rights of either party
hereunder or with respect to the Obligations or the Collateral shall be effective unless in a
writing executed by the applicable party and no amendment or modification hereof shall be
effective unless is a writing executed by both parties, and then such amendment, modification,
consent or waiver shall be effective only in the specific instance and for the purpose for which
given.  No notice or demand on Pledgor in any case shall entitle Pledgor to any other or further
notice or demand in similar or other circumstances, or constitute a waiver of any right of Pledgee
to take action without notice or demand.  To the extent permitted by applicable law, Pledgor
waives its right to trial by jury with respect to this Agreement and all rights to require Pledgee to
elect among any of its remedies with respect to this Agreement or any other collateral for or
sources of payment of the Obligations.

19.    Consent to Jurisdiction; Governing Law; Miscellaneous.  The Pledgor hereby
submits to the jurisdiction of the courts of the Commonwealth of Massachusetts and the United
States District Court for the District of Massachusetts, as well as to the jurisdiction of all courts
to which an appeal may be taken or other review sought from the aforesaid courts, for the
purpose of any suit, action or other proceeding arising out of any of the Pledgor's obligations
under or with respect to this Agreement, expressly waives any and all objections it may have as
to venue in any of such courts, and agrees that service of process may be made by mailing a copy
of the summons to the Pledgor at its address as set forth in Section 17 of this Agreement.
Whenever possible each provision of this Agreement shall be interpreted in such manner as to be
effective, valid and enforceable under applicable law.  The provisions of this Agreement are
severable, however, and if any of the provisions of this Agreement shall be held by any court of
competent jurisdiction to be unenforceable, such holding shall not affect or impair any other
provision hereof or, to the extent not invalidated, the effect of said unenforceable provisions in
other jurisdictions.  This Agreement shall take effect as a sealed instrument and inure to the
benefit of the Pledgee and its successors and assigns and shall be binding upon the Pledgor and
the heirs, executors, administrators, other legal representatives, successors and assigns of the
Pledgor.  This Agreement and all the rights and remedies of the Pledgee and the Pledgor shall be
determined as to their validity, construction, effect and enforcement by the laws of the
Commonwealth of Massachusetts.

10

IN WITNESS WHEREOF the Pledgor has caused this Agreement to be duly executed as of the date first set forth above.

PLEDGEE:                                PLEDGOR

By: _____                    By: _____
   Brian J. Kelly                          Max Hugel

### ACKNOWLEDGEMENT OF PLEDGE

but not for purposes of becoming a stockholder except as provided in section 10 of the Stock Pledge Agreement

By execution hereof, Rockingham Venture, Inc. acknowledges the foregoing pledge and shall pay to Lender any dividends or other distributions payable with respect to the Collateral after receipt by Rockingham Venture, Inc. of a notice that an Event of Default has occurred hereunder.

ROCKINGHAM VENTURE, INC.

By: _____

TRADOCS:1414827.4(%b_r04!.DOC)

IN WITNESS WHEREOF the Pledgor has caused this Agreement to be duly executed as of the date first set forth above.

PLEDGEE                                    PLEDGOR

by: _____             By: _____
     Brion J. Kelly                              Max Hugel

### ACKNOWLEDGEMENT OF PLEDGE

By execution hereof, Rockingham Venture, Inc. acknowledges the foregoing pledge and shall pay to Lender any dividends or other distributions payable with respect to the Collateral after receipt by Rockingham Venture, Inc. of a notice that an Event of Default has occurred hereunder.

*but not for purposes of becoming a stockholder except as provided in section 10 of the Stock Pledge Agreement*

ROCKINGHAM VENTURE, INC.

By: _____

TRADOCS:1414827.4(%b_r04!.DOC)

## DISCLOSURE SCHEDULE

The representations and warranties contained in Paragraph 4 of the Stock Pledge Agreement are subject to the following:

1.    <u>Title to Assets of Rockingham Venture, Inc.</u>  The assets of Rockingham Venture, Inc. are subject to the following liens and encumbrances:

(a)    A mortgage and security agreement granted to Bank of New Hampshire dated as of December 28, 1999 and recorded in the Rockingham County Registry of Deeds in Book 3446, Page 1778;

(b)    A mortgage and security agreement granted to Bank of New Hampshire dated as of September 22, 1995 and recorded in the Rockingham County Registry of Deeds in Book 3119, Page 2879;

(c)    Collateral assignments of leases and rents granted to Bank of New Hampshire dated as of December 28, 1999 and September 22, 1995 and recorded in the Rockingham County Registry of Deeds;

(d)    UCC financing statements naming Bank of New Hampshire as secured party and recorded in the office of the Secretary of State for the State of New Hampshire, the office of the town clerk for the Town of Salem, and the Rockingham County Registry of Deeds.

(e)    All matters contained in Schedule B of a title insurance policy issued to Bank of New Hampshire dated as of December 28, 1999 and attached hereto;

(f)    All matters disclosed in a survey titled "A.L.T.A./A.C.S.M. Land Title Survey, Rockingham Park Race Park, Salem, New Hampshire" by Kimball Chase Company, Project #94-5152, certification date August 22, 1995, and all matters disclosed in Surveyor's Report and Certification dated January 10, 2000.

(g)    Possible liens for real estate taxes for the tax year commencing April 1, 2000 which may not be yet due; and

(h)    Obligation to contribute a portion of real estate consisting of approximately 15 to 25 acres to an entity in which Rockingham Venture, Inc. is a 50% owner in the event that Rockingham Venture, Inc. is authorized under state law to conduct expanded gambling such as electronic games of chance, video lottery terminals and/or slot machines.

(i)    Obligation to transfer up to 50% interest in Rockingham Entertainment Company, LLC, in the event that Rockingham Venture, Inc. finalizes an agreement with Harrah's Entertainment, Inc. as outlined in a letter agreement dated as of December 21, 1999.

(j)     All matters disclosed in financial statements of Rockingham Venture, Inc. and provided to the Pledgee.

(k)     The licenses issued by the New Hampshire Pari-mutuel Commission and New Hampshire Sweepstakes Commission are non-assignable.

2.     <u>Consents to This Transaction.</u>  The transactions contemplated by the Stock Pledge Agreement require notice, assent, or consent from the following entities:

(a)     Pursuant to NH RSA 284:15, this transaction may be deemed to be a material change in the financial condition of Max Hugel.  Max Hugel will disclose this transaction the New Hampshire Pari-mutuel Commission in the form attached hereto.

(b)     Prior to exercising his rights to convert the amount due under the promissory note to 25% of the stock owned by the Pledgor, the Pledgee must be qualified by the New Hampshire Pari-mutuel Commission and investigated by the Office of the Attorney General pursuant to NH RSA 284.

(c)     Bank of New Hampshire, NA must assent to these transactions pursuant to its loan agreements with Rockingham Venture, Inc. dated as of September 22, 1995 and December 28, 1999.

(d)     Harrah's Entertainment, Inc. must assent to a transfer of an interest in the stock held by the Pledgor based upon negotiations between Rockingham Venture, Inc. and Harrah's Entertainment, Inc.

3.     <u>Compliance with Laws.</u>  To the best of Pledgor's knowledge, Rockingham Venture, Inc. is in compliance with all applicable federal and state laws except with regard to certain environmental maters that may be identified in the following reports:

(a)     Letter from the New Hampshire Department of Environmental Services and Groundwater Management Permit recorded in the Rockingham County Registry of Deeds in Book 3296, Page 2929;

(b)     Environmental Site Visit and Documentation Review Report for Rockingham Park, Rockingham Park Boulevard, Salem, New Hampshire, prepared for Bank of New Hampshire, prepared by Environmental Engineering & Remediation, Inc., and dated December 21, 1999

(c)     Report of Environmental Engineering and Remediation, Inc. dated March 6, 2000;

(d)     Preliminary Environmental Site Assessment performed by American Geotech, Inc. and dated August 23, 1995.

In addition to the foregoing documents, the Pledgor has provided the Pledgee with copies of the Biannual Monitoring Report dated November 12, 1999 and a letter from the New Hampshire Department of Environmental Services dated February 25, 2000.

Upon information and belief, the underground storage tanks have been removed (except for the underground storage tank that Rockingham Venture, Inc. has installed recently). Lead paint has been found at the day care center and Rockingham Venture, Inc. has painted the walls of the day care center.

The floor drains located in areas where hazardous materials are stored were discharging directly into a brook. This activity may have been in violation of law. Upon information and belief, these drains have been sealed. The transformer room requires remedial action involving hydrogen. Upon information and belief, Rockingham Venture, Inc. anticipates resolving this issue during calendar year 2001.

     5.    <u>Proceedings</u>

    (a)    The following proceedings affect Rockingham Venture, Inc.:

    (1) <u>Florida Horsemen's Benevolent and Protective Association, Inc. v. Meadowlands Racetrack, et al.</u> This matter is pending before the United States District Court for the Southern District of Florida. The Company is a defendant in this action arising out of a dispute on simulcast watering. The track which provided the races on which the Company accepted simulcast wagers is indemnifying the Company and has been defending the matter on behalf of the Company.

    (2) From time to time the Company receives notifications, pleadings and correspondence regarding injuries suffered or allegedly suffered by persons at Rockingham Park. To the extent that those claims have resulted in litigation, those claims are covered by insurance and are bring defended by attorneys provided by the Company's insurance carrier

    (3) The Company has provided you with information regarding contamination on a portion of the Company's property in Salem, New Hampshire arising from the alleged leakage of an underground storage tank. We have provided you with a status report from the New Hampshire Department of Environmental Services regarding this matter.

    (b)    The following proceeding affects Max Hugel:

    (1) Max Hugel and Laurie Gunar f/k/a Laurie Hugel were divorced on September 30, 1991, Case No. 88-52404 FC(19), Dade County Circuit Court, Florida. As a result, final judgment was entered on September 30, 1991. Pursuant to the final judgment, Max Hugel was obligated to pay Laurie Gunar the sum of $5,000,000, by a date certain, subject to extension.

Subsequent to the final judgment, disputes arose between Max Hugel and Laurie Gunar. These disputes were resolved in a Settlement Agreement dated in March, 1999 and approved by the United States Bankruptcy Court for the Southern District of Florida (see, In re Hugel, Bk No. 98-41594 BKC-RAM). This matter is pending final payment by Max Hugel to Laurie Gunar.

5.    Title to Stock.

(a)    Harrah's Entertainment, Inc. ("Harrah's"), successor to Showboat, Inc. and Rockingham Venture, Inc. (the "Company") are negotiating terms of an agreement to be implemented in the event that the State of New Hampshire enacts legislation which permits expanded gaming. The prior agreements between the Company and Showboat, Inc. and its affiliates prohibited the Pledgor from transferring his stock in the Company without prior consent. It is expected that such a restriction will be a part of an agreement between the Company and Harrah's if an agreement is finalized.

(b)    Forty (40) shares of stock of Rockingham Venture, Inc. owned by Max Hugel are held by his attorneys in Florida pending satisfaction of his obligations to his former wife pursuant to the Settlement Agreement referred to in paragraph 4(b)(i) above.

(c)    Transfers of stock by Max Hugel are subject to restrictions and provisions of NH RSA 284.

E:\DJCALLAG\3155 - (Hugel)\56449-Refinancing\disclosures

4

**TICOR TITLE INSURANCE COMPANY**           **SCHEDULE B**
Lender's Policy No.: 30-3018-107-00000074

**Part I**
**This policy does not insure against loss or damage by reason of the following:**

**Standard Exceptions:**

1.    Deleted.

2.    Easements, or claims of easements, not shown by the public records.

3.    Encroachments, overlaps, boundary line disputes, or other matters which would be
      disclosed by an accurate survey or inspection of the premises.

4.    Deleted.

**Special Exceptions:**

5.    Real estate taxes are paid through March 31, 2000; the property is subject to real estate
      taxes for the tax year(s) commencing April 1, 2000 and subsequent years, a lien not yet
      due and payable.

6.    Sewer bills, water bills, and/or any betterment assessments due and owing which
      constitute a lien against the property and have not been recorded.

7.    Information regarding square footage, acreage, tax map/block/lot information, or the
      address of the property, if contained in Schedule A or the Continuation of Schedule A, is
      for informational purposes and is not insured.

8.    Covenants, restrictions and obligations contained in Deed of Boston and Maine Railroad
      to The New Hampshire Jockey Club, Inc. dated December 20, 1957, recorded at Book
      1456, Page 18.

9.    Covenants, restrictions and obligations contained in Deed of Boston and Maine
      Corporation to said The New Hampshire Jockey Club, Inc., dated October 27, 1965,
      recorded at Book 1802, Page 340, and easements for pipes, drainage, ditches, poles and
      wires contained in said Deed.

10.   Easement granted by Boston and Maine Corporation to Granite State Electric Company
      dated November 18, 1965, recorded at Book 1798, Page 297.

-2-

11.  Terms and provisions of Agreement between William F. Smith and the Town of Salem (Water Department of the Town of Salem) dated March 6, 1934, recorded at Book 894, Page 369.

12.  Rights and easements granted to New England Telephone and Telegraph Company and Granite State Electric Company dated May 9, 1949, recorded at Book 1148, Page 221.

13.  Easements referred to in Deed of Andrew Miller to New England Breeders Club dated November 20, 1905, recorded with said Deeds in Book 613, Page 283.

14.  Flowage rights, if any, referred to in the following deeds:

a. Isaac Woodbury to Andrew Miller, dated June 10, 1905, at Book 609, Page 411;

b. Lester Hall to Andrew Miller, dated June 10, 1905, at Book 609, Page 369;

c. Charles E. Kimball to Andrew Miller, dated June 10, 1905, at Book 609, Page 372.

NOTE: See deeds purporting to assign said rights of flowage from Methuen Company to Arlington Mills dated March 22, 1927, at Book 830, Page 258.

15.  Two Easements for the transmission of electricity granted to Rockingham County Light and Power Company by deeds of George Woodbury recorded at Book 592, Pages 170 and 405.

16.  Rights and easement granted by New Hampshire Jockey Club, Inc. to New England Telephone and Telegraph Company dated December 27, 1965, recorded at Book 1859, Page 560.

17.  Rights of the State of New Hampshire, including rights of access, slope, embankment and drainage easements under the following instruments:

a. Commissioners Return of Highway Layout for Section Two, Interstate Route 93, recorded at Book 1541, Page 97, and dated April 4, 1960.

b. Commissioners Return of Highway Layout dated September 8, 1980, recorded at Book 2371, Page 1086.

c. Deed of Quitclaim from William F. Smith to State of New Hampshire dated June 15, 1960, recorded at Book 1563, Page 201.

18.  Possible rights of the public in streets and paved parking areas on the insured premises.

-3-

19.  Rights of the Town of Salem under a Sewer Easement from Rockingham Venture dated December 21, 1983 and recorded December 22, 1983 at Book 2473, Page 1752.

20.  Rights and easements granted by George Woodbury to the Hudson, Pelham and Salem Electric Railway Company, recorded at Book 592, Page 420.

21.  UCC Financing Statement from National Electronics Sale, Service and Financial Co., Inc. to Arlington Trust Company. Recorded May 21, 1984 at Book 2491, Page 1738 wherein the property owners are recited to be Rockingham Venture and Rockingham Venture, Inc.

22.  Parking easements granted in the Deed of Rockingham Venture to NED Rockingham Limited Partnership dated 2828, Page 1485.

23.  Easement Agreement regarding a gate, a pathway and parking, among Rockingham Venture, the Town of Salem, NED Rockingham Limited Partnership, Raymond Kellett, Jr. and Laurel G. Kellett dated March 29, 1990 and recorded at Book 2838, Page 1514.

24.  Lease between Rockingham Venture (Lessor) and the Town of Salem (Lessee) for parking for a term of 50 years notice of which lease has been recorded at Book 2898, Page 1041, and supplemented by an affidavit at Book 3063, Page 1925.

25.  Terms of the Quitclaim Deed and Flyover Easement of Rockingham Venture to NED Rockingham Limited Partnership dated February 27, 1990 recorded at Book 2834, Page 383, and the Amendment of Easement from Rockingham Venture to the State of New Hampshire, as successor in interest to NED Rockingham Limited Partnership, dated April 5, 1991, recorded at Book 2886, Page 2523.

26.  Encroachment Agreement, regarding the "Flyover Easement", between Rockingham Venture and the State of New Hampshire, dated August 9, 1991 and recorded at Book 2898, Page 2325.

27.  Those matters disclosed by a Plan entitled "A.L.T.A./A.C.S.M. Land Title Survey, Boundary & Existing Conditions Plan of Rockingham Park Racetrack in Rockingham County on Main Str., Mall Rd., Route 38 & Rockingham Blvd." dated May, 1994 and certified on December 27, 1994, prepared by Kimball Chase Company, Inc. and the accompanying Surveyor's Report dated December 23, 1994.

28.  Facts, details and terms of the following recorded plans:

     a. 16856 (2 sheets). Consolidation and Subdivision Plan for Rockingham Venture prepared by Kimball Chase. Dated July, 1987. Recorded August 20, 1987.

-4-

b. 19425 (2 sheets). Lot Line Adjustment Plan for Rockingham Venture prepared by Kimball Chase. Dated January, 1989. Recorded June 5, 1989.

c. 20157. Easement Plan. NED Salem Realty Trust prepared by Kimball Chase. Dated February, 1990. Recorded February 28, 1990.

d. 20210. Subdivision Plan. Rockingham Venture. Dated January , 1990. Prepared by Kimball Chase. (Depicts, among other things, Route 28 Road Widening Area.) Recorded April 2, 1990.

e. 20211. Subdivision Plan. Rockingham Venture. Dated January, 1990 by Kimball Chase. (Depicts, among other things, Rockingham Park Boulevard Road Widening Area, Municipal Parking Area, Storm Water Discharge Points and 45 Food Access Easement Area.) Recorded April 2, 1990.

f. 20247. Easement Plan. Rockingham Venture. Dated February, 1990 and prepared by Kimball Chase and depicts the flyover easement area. Recorded April 19, 1990.

29.   Rights of the following parties to occupy a portion of the premises:

a. rights of horsemen to occupy the barns during the racing season;

b. rental agreements to various groups to operate bingo games in the turf club from 5-10 p.m., but each agreement has a 30 day notice provision to terminate;

c. rental agreements to various groups to operate shows such as computer shows, craft shows, home shows in the grandstand, but each agreement has a 60 day notice provision to terminate;

d. Town of Salem under recorded lease for municipal parking area.

30.   Mortgage and Security Agreement of Rockingham Venture, Inc. to Bank of New Hampshire dated September 22, 1995, recorded at Book 3119, Page 2854.

31.   Collateral Assignment of Leases and Rents of Rockingham Venture, Inc. to Bank of New Hampshire dated September 22, 1995, recorded at Boo 3119, Page 2879.

32.   Letter from New Hampshire Department of Environmental Services and Groundwater Management Permit recorded at Book 3296, Page 2929.

End of Part I.



EASTERN
D E V E L O P M E N T

September 14, 2004

**BY FEDERAL EXPRESS**

Rockingham Venture, Inc.
77 Rockingham Park Boulevard
Salem, NH 03079
Attn: President

Re:     Stock Pledge Agreement dated December 29, 2000 by
        and between Max Hugel and Brian J. Kelly

Dear Sir/Madam:

I am writing to you on behalf of Brian J. Kelly, the Pledgee under the captioned Stock Pledge Agreement. Pursuant to the Stock Pledge Agreement, Mr. Kelly holds a security interest and lien in forty (40) shares of common stock of Rockingham Venture, Inc. granted to him by Max Hugel as security for a certain Note in the amount of $5,000,000. The shareholders of RVI had consented to Mr. Hugel's grant of the security interest in his stock. Mr. Hugel has been notified that his Note is in default. Pursuant to Section 9 of the Stock Pledge Agreement, if such a default shall occur and be continuing, the Pledgee shall be entitled to receive and retain as collateral security for the obligations due to Pledgee any and all dividends and other distributions at any time and from time to time declared upon or paid with respect to the pledged stock and the Pledgee shall be entitled to exercise any and all voting rights and other privileges pertaining to such stock. Pursuant to this provision, RVI is hereby instructed to forward any and all distributions, dividends or other payments related to the pledged stock to the Pledgee at the following address:

> c/o Eastern Development, LLC
> 120 Presidential Way, Suite 300
> Woburn, MA 01801
> Attn: Brian J. Kelly

Pledgee reserves all rights and remedies at law and equity and under the Pledge Agreement with respect to the pledged stock, and nothing herein shall be deemed to waive or restrict Pledgee's rights and remedies, in whole or in part, with respect thereto. Thank you.

Very truly yours,

Raymond M. Murphy

Cc:     Brian J. Kelly
        Max Hugel

games of chance, casino games, table games, or other similar gambling activities), at such times and under such terms and conditions as the Commission and the State of New Hampshire may, from time to time, grant and approve.

2.   SCOPE OF DUTY.  Subject only to (i) policies of the Board of Directors of Rockingham, (ii) the provisions of this Agreement, (iii) existing contractual rights conferred on others (including but not limited to catering and parking concessions), (iv) the laws of the State of New Hampshire and the United States and (v) the rules and regulations of the Commission, PM and Hugel shall have discretion in the day-to-day operation of Rockingham Park, including, but not limited to, the following functions in the name of and in behalf of Rockingham:

A.   The hiring of personnel for the Rockingham Park operation, related compensation arrangements, including but not limited to the positions identified on Schedule A to this Agreement.

B.   Supervising the acquisition and maintenance of the personal property, equipment, supplies and services necessary to conduct pari-mutuel racing at Rockingham Park, including but not limited to those items identified on Schedule B to this Agreement. PM and Hugel hereby agree to disclose to the Board of Directors of Rockingham any interest held by Hugel or PM (or its officers or directors) with respect to any vendor of the aforementioned equipment, supplies, or services at any time.

C.   The hiring of personnel for the other business activities in which Rockingham Park may, from time to time, be engaged, including the operation of electronic games of chance, casino games, table games, or other similar gambling activities, and related compensation arrangements, including but not limited to the positions identified on Schedule C.

D.   Negotiating with unions or other representatives of labor providing services at Rockingham Park; provided however, that any collective bargaining agreement or similar contractual agreement shall be subject to the approval of the Board of Directors of Rockingham, and such collective bargaining agreement or similar contractual agreement shall be executed by a duly authorized officer of Rockingham.

E.   Negotiating with (1) the Horsemen's Protective Benevolent Association or other representatives of the horsemen racing at Rockingham Park, and (2) the representatives of other businesses which may operate

2

Paragraph 3(B) above, gross income from gaming activities shall equal gross revenues from electronic games of chance, casino games and table games less return to bettors.

D. <u>Limitation on Payment of Incentive Management Fees.</u>
Notwithstanding any other provision in this Agreement, the Incentive Management Fees described in section 3(B) shall be deemed to be "Restricted Payments" pursuant to the Offering Circular; accordingly, the payment of Incentive Management Fees shall be subject to the terms and conditions of that certain Indenture to be issued by Rockingham in connection with the Offering Circular.

4. <u>OFFICE SPACE.</u> Rockingham agrees to supply PM and Hugel with appropriate office space and equipment, including the usual office machinery and all other personal property to be used in the performance of the duties described in this Agreement.

5. <u>TERMINATION.</u> This Agreement may be terminated upon (a) the sale by Rockingham of all or substantially all of the Rockingham Park assets, (b) the sale by Rockingham stockholders of seventy-five percent (75%) or more of their stock, or (c) failure of Rockingham to receive any necessary permits and licenses to conduct racing or other permitted activities.

6. <u>OTHER RACING/BUSINESS ENTERPRISES.</u> Rockingham acknowledges and agrees that, during the entire term of this Agreement, PM and its stockholders, and Hugel, each as individuals, partners, joint venturers, corporation stockholders, officers, directors, or as employees, may, directly or indirectly, (a) own, acquire, manage, operate, or otherwise be interested in any other gambling enterprise or racing enterprise (which enterprise may include electronic games of chance, casino games, table games, riverboat gambling, or other similar gambling activities) in any way relating to the ownership, management or operation thereof and in any related or other business enterprise (including other enterprises which may include gambling) and (b) enter into any contracts, agreements or arrangements with other racing enterprises, any enterprises related thereto or any other business.

7. <u>ARBITRATION.</u> Any dispute arising out of this Agreement shall be settled in New Hampshire in accordance with the rules then prevailing of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court of competent jurisdiction. It is the purpose of this Agreement, and

4

PM MANAGEMENT GROUP, INC.

By: _____
      Edward J. Keelan, President

**6**

MAS-20030912
guen

**Commonwealth of Massachusetts**
**SUFFOLK SUPERIOR COURT**
**Case Summary**
**Civil Docket**

03/11/2005
03:38 PM

# SUCV2005-00869
## Kelly v Hugel et al

| | | | | | |
|---|---|---|---|---|---|
| **File Date** | 03/07/2005 | **Status** | Disposed: transfered to other court (dtrans) | | |
| **Status Date** | 03/11/2005 | **Session** | BLS2 - CtRm 20 | | |
| **Origin** | 1 | **Case Type** | BF1 - Complex UCC issues | | |
| **Lead Case** | | **Track** | B | | |

| | | | | | |
|---|---|---|---|---|---|
| **Service** | | **Answer** | | **Rule** | 12/19/20 |
| **Rule 15** | | **Discovery** | | **Rule 56** | |
| **Final PTC** | | **Disposition** | | **Jury Trial** | No |

PARTIES

**Plaintiff**
Brian J Kelly
Active 03/07/2005

**Private Counsel 556511**
Christopher A Kenney
Sherin and Lodgen LLP
101 Federal Street
Boston, MA 02110
Phone: 617-646-2000
Fax: 617-646-2222
Active 03/07/2005 Notify

**Private Counsel 204100**
Thomas Paul Gorman
Sherin and Lodgen LLP
101 Federal Street
Boston, MA 02110
Phone: 617-426-5720
Fax: 617-542-5186
Active 03/07/2005 Notify

**Defendant**
Max Hugel
Service pending 03/07/2005

**Private Counsel 552808**
Mark J Sampson
Devine Millimet & Branch
300 Brickstone Square
PO Box 39
Andover, MA 01810
Phone: 978-475-9100
Fax: 978-470-0618
Active 03/11/2005 Notify

**Private Counsel 652398**
Timothy E Bray
Devine Millimet & Branch
300 Brickstone Square
PO Box 39
Andover, MA 01810
Phone: 978-475-9100
Fax: 978-470-0618
Active 03/11/2005 Notify

MAS-20030912
guen

**Commonwealth of Massachusetts**
SUFFOLK SUPERIOR COURT
Case Summary
Civil Docket

03/11/2005
03:38 PM

## SUCV2005-00869
### Kelly v Hugel et al

| Defendant | |
|---|---|
| Rockingham Venture Inc<br>Service pending 03/07/2005 | |

| Date | Paper | Text |
|---|---|---|
| 03/07/2005 | 1.0 | Complaint (Business) filed |
| 03/07/2005 | | Origin 1, Type BF1, Track B. |
| 03/07/2005 | 2.0 | Civil action cover sheet filed |
| 03/07/2005 | 3.0 | Notice of acceptance into the business litigation session |
| 03/07/2005 | 4.0 | Plffs ex parte motion for short order of notice |
| 03/07/2005 | 5.0 | Plffs motion for preliminary injunctive relief |
| 03/07/2005 | | Notice ordered issued re: prayers 3-11 returnable Friday March 11, 2005 in room 20 at 2:30PM (Burnes J)  Summons and order of notice issued  See P#1 |
| 03/07/2005 | 6.0 | Motion of plff for the appointment of Butler & Witten as special process server and allowed (Burnes J) |
| 03/10/2005 | | Certified copy of petition for removal to U. S. Dist. Court of Deft. Max Hugel U. S. Dist.#(05-10460DPW). |
| 03/11/2005 | | Case REMOVED this date to US District Court of Massachusetts |

| Date | Session | Event | Result |
|---|---|---|---|
| 03/11/2005 | CtRm 20 | Motion/Hearing: order of notice | |

. HEREBY ATTEST AND CERTIFY ON
MARCH 14, 2005, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY

ASSISTANT CLERK

| CIVIL ACTION COVER SHEET | Docket No(s) B.L.S. 05-0869 | Trial Court of Massachusetts Superior Court Department County: SUFFOLK |
|---|---|---|

PLAINTIFF(S)
Brian J. Kelly

DEFENDANT(S)
Max Hugel and Rockingham Venture, Inc.

ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE
Christopher A. Kenney BBO# 556511
Thomas Paul Gorman BBO # 204100
Kenney & Sams, P.C. / P 101 Federal St.
Boston 04110
617 646 2000

ATTORNEY (if known)

Origin Code

Original Complaint

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| BF1 | Commercial Paper | * ( B ) | ( ) Yes   (X) No |

The following is a full and detailed statement of the facts on which plaintiff relies to determine eligibility in to The Business Litigation Session.

This is an action to recover in excess of $5,000,000, the principal under a Promissory Note, and to obtain reach and apply relief and relief under a stock pledge agreement as well as reach and apply relief tender with respect to management Agreement, including preliminary injunctive relief relating to the four counts under the Complaint.

\* A Special Tracking Order shall be created by the Presiding Justice of the Business Litigation Session at the Rule 16 Conference.

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT    N/A

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record    Thos Paul Gorman    DATE: 3/2/05

AOTC-6 mlc005-11/99
A.O.S.C. 1-2000

I HEREBY ATTEST AND CERTIFY ON
MARCH 14, 2005, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:
ASSISTANT CLERK

**3**

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT
CIVIL ACTION
NO. 05-0869 BLS2
(Judge Burnes)

BRIAN J. KELLY

<u>vs.</u>

MAX HUGEL, et al.

<u>NOTICE OF ACCEPTANCE INTO
BUSINESS LITIGATION SESSION</u>

This matter has been accepted into the Suffolk Business Litigation Session. It has been assigned to Judge Nonnie S. Burnes.

<u>Hereafter, as shown above, all parties must include the initials "BLS2" at the end of the docket number on all filings. Also, Judge Burnes's name must be included.</u>

Counsel for the plaintiff(s) is hereby advised that within seven (7) days of the filing of an appearance, answer, motion or other response to the complaint by or on behalf of the defendant(s) which has been served with process within the time limitation of Mass. R. Civ. P. Rule 4(j), or such other time as may be modified by the Court, he or she shall send notice thereof to Judge Burnes's Session Clerk, Suffolk Superior Court, 90 Devonshire Street, Boston, MA 02109.

Upon receipt of such notice, the Court will issue a Notice of Initial Rule 16 Conference for purposes of meeting with all counsel to plan for the litigation and resolution of this matter. If possible, the Court requests counsel for the plaintiff(s) to confer with counsel for the defendant(s) and to suggest to the Court a range of dates available for all parties for this purpose and to include those dates in the notice. The Court, however, retains the discretion to schedule the hearing at a time that fits within its own schedule.

Allan van Gestel, Presiding Justice
Business Litigation Session

DATED:    March 7, 2005

I HEREBY ATTEST AND CERTIFY ON

<u>MARCH 14, 2005</u>, THAT THE

FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY.

ASSISTANT CLERK

**4**

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS

SUPERIOR COURT CIVIL
ACTION NO. 05-0869-BLS

```
                                    )
BRIAN J. KELLY                      )
                                    )
              Plaintiff,            )
                                    )
v.                                  )
                                    )
MAX HUGEL,                          )
                                    )
              Defendant,            )
                                    )
and                                 )
                                    )
ROCKINGHAM VENTURE, INC.,           )
                                    )
              Defendant and         )
              Reach-and-Apply       )
              Defendant.            )
                                    )
```

## PLAINTIFF BRIAN J. KELLY'S EX PARTE MOTION FOR SHORT ORDER OF NOTICE

Pursuant to Mass. R. Civ. P. 6(c), the plaintiff Brian J. Kelly moves for a short order of notice on his Motion For Preliminary Injunctive Relief under Counts II, III and IV and prayers 3 through 11 of the Verified Complaint.

In support of his Motion, Kelly states that a short order of notice is necessary for the protection of his interests in certain shares of the defendant and reach-and-apply defendant Rockingham Venture, Inc., as security for a $5,000,000 loan under a Promissory Note executed by the defendant Max Hugel, which Note is now in default.

00055823.DOC /

5

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS                                    SUPERIOR COURT CIVIL
                                               ACTION NO.

                                               05-0869-BLS

|                                    |    |
| ---------------------------------- | -- |
| BRIAN J. KELLY                     | )  |
|                                    | )  |
|            Plaintiff,              | )  |
|                                    | )  |
| v.                                 | )  |
|                                    | )  |
| MAX HUGEL,                         | )  |
|                                    | )  |
|            Defendant,              | )  |
|                                    | )  |
| and                                | )  |
|                                    | )  |
| ROCKINGHAM VENTURE, INC.,          | )  |
|                                    | )  |
|            Defendant and           | )  |
|            Reach-and-Apply         | )  |
|            Defendant.              | )  |

MICHAEL JOSEPH DONOVAN
CLERK/MAGISTRATE
2005 MAR -7 P 1: 29
SUFFOLK SUPERIOR COURT
CIVIL CLERK'S OFFICE

## PLAINTIFF BRIAN J. KELLY'S MOTION FOR
## PRELIMINARY INJUNCTIVE RELIEF

Pursuant to Mass. R. Civ. P. 65, the plaintiff Brian J. Kelly ("Kelly") moves for a

preliminary injunction seeking relief against the defendant Max Hugel ("Hugel") and the

defendant and reach-and-apply defendant Rockingham Venture, Inc. ("Rockingham Venture") in

connection with the debt Hugel owes to Kelly under a certain Promissory Note dated December

29, 2000.

As grounds for this motion, Kelly states that the requested injunctive relief is necessary

(1) to prevent the irreparable harm caused by a diminution in value of, or disposition of funds

relating to, shares of stock in Rockingham Venture, which otherwise secures the debt from Hugel

to Kelly, and the disposition of funds that Rockingham Venture owes to Hugel, and (2) to

00054412.DOC /

prevent the irreparable harm caused by any interference with Kelly's right to receive payments that Rockingham Venture otherwise owes to Hugel. Specifically, Kelly seeks the following injunctive relief under Counts I through IV of the Verified Complaint, and prayers 3 through 11:

### Requested Preliminary Injunctive Relief

1.     Preliminarily enjoin Hugel, his agents, employees, servants, and attorneys, from selling, alienating, transferring, conveying, hypothecating, destroying, dissipating, pledging, spending, encumbering, assigning, or otherwise disposing of any and all property or assets, tangible or intangible (including but not limited to money), owned directly, or indirectly, or beneficially by Hugel, providing that nothing in this order shall prevent the expenditure of up to $5,000 a month plus such sums as are necessary for Hugel to pay his taxes.

2.     On Count III, preliminarily enjoin the defendant Max Hugel, his agents, servants, employees and attorneys, from transferring, alienating, selling conveying, encumbering, hypothecating, destroying, assigning , dissipating, pledging , or otherwise disposing of his shares in Rockingham Venture.

3.     On Count III, enter a preliminarily injunction ordering the defendant, his agents, servants, employees and attorneys, forthwith to tender the balance of Hugel's shares of Rockingham Venture to the plaintiff's attorneys, to be held as security for all sums adjudged to be owed by Hugel to Kelly.

4.     On Count III, preliminary enjoin Rockingham Venture, its officers, agents, servants, employees, and attorneys, from making any distributions, transfers, or other payments on account of Hugel's interest or shares in such corporation, and further that the above listed corporation be ordered to pay into an interest bearing escrow account all such distributions,

00054412.DOC /                                    2

transfers, or payments -- as and when they would otherwise become due and payable -- to be held as security for all sums adjudged to be owed by Hugel to Kelly.

5.    On Count III, preliminarily enjoin the defendant Max Hugel, his agents, servants, employees and attorneys, from receiving, collecting, encumbering, assigning, pledging, or otherwise disposing of any distributions, transfers or payments from Rockingham Venture on account of his shares or interest therein.

6.    On Count III, order the defendant Max Hugel, his agents, servants, employees and attorneys, to promptly provide all written and oral information relating to Rockingham Venture promptly upon receipt of such information by Hugel.

7.    On Count IV, preliminary enjoin Rockingham Venture, its officers, agents, servants, employees, and attorneys, from making any distributions, transfers, or other payments on account of the Management Agreement with Hugel to Hugel and ordering that such amounts be held as security for all sums adjudged to be owed by Hugel to Kelly.

8.    On Count IV, preliminarily enjoin the defendant Max Hugel, his agents, servants, employees and attorneys, from receiving, collecting, encumbering, assigning, pledging, or otherwise disposing of any payments to him under the Management Agreement.

9.    On Counts III and IV, order Rockingham Venture to provide an accounting of all amounts paid or to be paid to Hugel, or amounts otherwise set aside for Hugel.

### Factual Basis For Preliminary Injunctive Relief

In support of his Motion, Kelly relies on the allegations of the Verified Complaint, which sets forth the following:

1.    On or about December 29, 2000, Hugel executed and delivered to a Promissory Note (the "Note") in the principal amount of $5,000,000 whereby Hugel, for consideration,

promised, under seal, to pay Kelly the balance of the loan amount, with interest and costs of collection, including reasonable attorneys' fees and expenses, all as more particularly set forth in the Note.

2.    Hugel has failed and refused to repay the balance under the Note according to the terms of the Note, which became due and payable on August 24, 2004. Hugel has failed and refused to make payment. The Note is thus in default and Hugel owes Kelly $5,000,000, plus interest and other sums required to be paid under the Note, including costs of collection and reasonable attorneys' fees and expenses. As of March 1, 2005, the balance owed was $7,000,273.97.

3.    All conditions precedent have been performed or have occurred.

4.    On or about December 29, 2000, Hugel and Rockingham Venture executed and delivered a Stock Pledge Agreement, which obligated Rockingham Venture to pay to Kelly dividends or other distributions otherwise owing to Hugel.

5.    Hugel also has the right to payment of amounts under a certain Management Agreement entered into with Rockingham Venture.

6.    Pursuant to G.L. c. 214, § 3(6), Hugel's property, right, title or interest in the stock of Rockingham Venture can be reached and applied in payment of all debts Hugel owes to Kelly.

7.    Pursuant to G.L. c. 214, § 3(7), Hugel's shares in Rockingham Venture can be reached and applied in payment of all sums Hugel owes Kelly, whether or not the action is founded upon a debt.

8.    Likewise, Hugel's right to payment under the Management Agreement can be reached and applied in payment of all sums Hugel owes Kelly.

00054412.DOC /                                    4

In further support of his motion, Kelly relies on the allegations of the Verified Complaint,

and his Memorandum of Law, filed herewith.

BRIAN J. KELLY

By his attorneys,

Christopher A. Kenney, BBO#556511
Thomas Paul Gorman, BBO#204100
Sherin and Lodgen LLP
101 Federal Street
Boston, MA 02110
(617) 646-2000
(617) 646-2222 (fax)

Dated: March 7, 2005

HEREBY ATTEST AND CERTIFY ON

MARCH 14, 2005 THAT THE

FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY

ASSISTANT CLERK

00054412.DOC /                    5

6

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS

SUPERIOR COURT CIVIL
ACTION NO.

05-0869 ~*BLS*

*March 7, 2005*
*Filed and approved*
*(Burnes, J.)*
*Clare A. Walsh*
*asst Clerk*

|  |  |
|---|---|
| BRIAN J. KELLY | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| MAX HUGEL, | ) |
|  | ) |
| Defendant, | ) |
|  | ) |
| and | ) |
|  | ) |
| ROCKINGHAM VENTURE, INC., | ) |
|  | ) |
| Defendant and | ) |
| Reach-and-Apply | ) |
| Defendant. | ) |

## PLAINTIFF BRIAN J. KELLY'S EX PARTE MOTION FOR
## APPOINTMENT OF SPECIAL PROCESS SERVER

Pursuant to Mass. R. Civ. P. 4, the plaintiff Brian J. Kelly moves for the appointment of

Butler and Witten, Constables, West Roxbury, Massachusetts (disinterested parties and over the

age of eighteen) as special process server to serve the summons and all process in this matter.

In support of his motion, plaintiff states that the appointment of Butler and Witten,

Constables will facilitate the service of process, will enable the plaintiff to obtain the expedited

relief required in this action, and is in the interests of justice.

00056075.DOC /

BRIAN J. KELLY

By his attorneys,

Christopher A. Kenney, BBO#556511
Thomas Paul Gorman, BBO#204100
Sherin and Lodgen LLP
101 Federal Street
Boston, MA 02110
(617) 646-2000
(617) 646-2222 (fax)

Dated: March 7, 2005

HEREBY ATTEST AND CERTIFY ON

MARCH 14, 2005, THAT THE

FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY

ASSISTANT CLERK