UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRIAN J. KELLY, <br><br> Plaintiff, <br><br> v. <br><br> MAX HUGEL, <br><br> Defendant, <br><br> and <br><br> ROCKINGHAM VENTURE, INC., <br><br> Defendant and <br> Reach-and-Apply <br> Defendant. | C.A. NO. 05 10460 DPW |

PLAINTIFF BRIAN J. KELLY'S REPLY TO
DEFENDANT MAX HUGEL'S COUNTERCLAIM

First Defense

1.  The plaintiff and defendant-in-counterclaim Brian J. Kelly ("Kelly") states that the "Introduction" to the Counterclaim merely characterizes the action, and requires no response. Kelly admits so much of the allegations of paragraph 1 of the Counterclaim as alleges that the defendant and plaintiff-in-counterclaim Max Hugel ("Hugel") owns stock in Rockingham Venture, Inc. ("RVI"), and admits on information and belief the remaining allegations of paragraph 1 of the Counterclaim..

2.  Kelly admits the allegations of the first and last sentences of paragraph 2 of the Counterclaim, admits that he is a "principal" of Eastern Development, LLC ("Eastern") to the extent that "principal" means he has an ownership interest in Eastern Development, LLC

("Eastern"), and denies the remaining allegations of the second sentence of paragraph 2 of the Counterclaim.

3. Kelly admits that RVI owns approximately 171 acres of land in New Hampshire and that it owns and operates the Rockingham Park Race Track thereon, as alleged in paragraph 3 of the Counterclaim, and states that he is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations of paragraph 3 of the Counterclaim.

4. Kelly admits that he, on behalf of Eastern, and Eastern have had an interest in acquiring the RVI property, but states that he does not know what period of time is referenced in the first sentence of paragraph 4, and therefore is without information or knowledge sufficient to form a belief as to the truth of the reference. Kelly denies that Hugel has fully performed his obligations under the Loan by making timely quarterly interest payments, each in the amount of $56,250, insofar as no such payments have been made since Hugel's default, and admits the remaining allegations of paragraph 4 of the Counterclaim.

5. Kelly admits that principals of RVI (often through Hugel) and Eastern (often through Kelly) have been involved in negotiations and offers, and states that because Hugel has not identified the "contractual arrangements" referred to, he is without information or knowledge sufficient to form a belief as to the truth of the allegations regarding such arrangements concerning the potential sale of RVI property to Eastern or to Eastern affiliates, and therefore denies them. Kelly further denies the reference to "shells" and states that because it is not clear what period is referred to as a "long" history, and therefore he is without information or knowledge sufficient to form a belief as to the truth of that allegation. Kelly denies the remaining allegations of paragraph 5 of the Counterclaim.

00063471.DOC /

6.  Kelly states that the document referred to in paragraph 6 of the Counterclaim speaks for itself and is the best evidence of its contents. Kelly denies that he "controlled" WPS, and admits that the negotiations occurred by employees and agents of Eastern, on one hand, and RVI, on the other.

7.  Kelly states that the document referenced in paragraph 7 speaks for itself, and is the best evidence of its contents.

8.  Kelly states that the document referenced in paragraph 8 speaks for itself, and is the best evidence of its contents.

9.  Kelly states that the notice and the agreement referred to in paragraph 9 of the Counterclaim speak for themselves, and are the best evidence of their contents, and denies the remaining allegations of paragraph 9.

10. Kelly admits the first sentence of paragraph 10 but denies the second sentence of paragraph 10.

11. Kelly admits that RVI and CBL & Associates Properties, Inc. entered into negotiations for the purchase and sale of the RVI property, denies the second sentence of paragraph 11, and states that the notice referred to speaks for itself, and is the best evidence of its contents.

12. Kelly states that the document referred to in paragraph 12 of the Counterclaim speaks for itself, and is the best evidence of its contents.

13. Kelly states that he is without information or knowledge sufficient to form a belief as to the truth of the allegations of paragraph 13 of the Counterclaim.

14. Kelly states that he is without information or knowledge sufficient to form a belief as to the truth of the allegations of the first sentence of paragraph 14, and admits the allegations of the second sentence of paragraph 14 of the Counterclaim.

15. Kelly admits the allegations of paragraph 15 of the Counterclaim.

16. Kelly admits that he and Elliot Levine, an accountant acting on behalf of Hugel, discussed the possibility of an extension, among other things, but denies the remaining allegations of paragraph 16 of the Counterclaim.

17. Kelly states that the proposal referred to speaks for itself, and is the best evidence of its contents, denies that discussions for the purchase and sale of the RVI Property were conducted by "Kelly, through Eastern (or an Eastern affiliate)," and denies that he, as opposed to an entity in which he has an interest, made a proposal, but admits the remaining allegations of paragraph 17 of the Counterclaim.

18. Kelly states that the notice referred to speaks for itself, and is the best evidence of its contents, and denies the remaining allegations of paragraph 18 of the Counterclaim.

19. Kelly denies the allegations of paragraph 19 of the Counterclaim.

20. Kelly admits that issue of potential tax liabilities was a concern during negotiations, denies that there was a "Conveyance Agreement," and denies the remaining allegations of paragraph 20 of the Counterclaim.

21. Kelly admits the first sentence of paragraph 21 to the effect that drafts were exchanged, but denies that a Conveyance Agreement had been reached and that the drafts "documented" a Conveyance Agreement, and denies that Kelly's representatives "pressured" Hugel. Kelly admits that the value of the 40 shares in RVI was at issue during negotiations; denies that the Conveyance Agreement required no such representation, insofar as, in part, there

was no "Conveyance Agreement;" denies that he "abandoned" a request for the representation referenced in paragraph 21; and denies the remaining allegations of paragraph 21 of the Counterclaim.

22. Kelly states that he is without information or knowledge sufficient to form a belief as to whether any final approval was obtained with respect to the process described in paragraph 22 of the Counterclaim, and denies that he "initiated" the process referred to in paragraph 22 of the Counterclaim.

23. Kelly admits the allegations of the first sentence of paragraph 23 of the Counterclaim, and denies the remaining allegations of paragraph 23 of the Counterclaim.

24. Kelly admits that RVI continued to discuss the purchase and sale of the RVI property with Eastern and CBL, and that RVI sent out a request for proposal and term sheet, to which Eastern and CBL responded, but denies the characterization of the offers, which speak for themselves.

25. Kelly admits that RVI rejected the CBL offer and states that RVI's communication regarding Eastern's proposal, and Eastern's proposal, speak for themselves, denies that Heritage was controlled by Kelly, or that it was an Eastern "shell," and states that the document referred to in paragraph 25 of the Counterclaim speaks for itself, and is the best evidence of its contents.

26. Kelly admits that RVI proposed documents to Heritage, and states that the documents referred to speak for themselves and are the best evidence of their contents.

27. Kelly admits that Heritage sent a letter on or about January 28, 2005 to RVI, as well as certain documents, all of which speak for themselves and are the best evidence of their contents.

-6-

28.  Kelly denies that he "abruptly" gave notice that he would refuse to perform the Conveyance Agreement, as no such agreement existed.

29.  Kelly admits that Dunn wrote to Murphy on or about March 4, 2005, which writing speaks for itself, and denies that there was an agreement, and that Hugel stood "ready, willing and able to perform it."

30.  Kelly admits that he brought his complaint on March 7, 2005, which complaint speaks for itself.

31.  Kelly repeats and realleges as if set forth herein his responses to paragraphs 1 through 30 of the Counterclaim

32.  Kelly admits that an actual controversy exists between the parties concerning Hugel's obligations under the Note.

33.  Kelly denies the allegations of paragraph 33 of the Counterclaim.

34.  Kelly repeats and realleges as if set forth herein his responses to paragraphs 1 through 33 of the Counterclaim

35.  Kelly denies the allegations of paragraph 35 of the Counterclaim.

36.  Kelly denies the allegations of paragraph 36 of the Counterclaim.

37.  Kelly denies the allegations of paragraph 37 of the Counterclaim.

38.  Kelly denies the allegations of paragraph 38 of the Counterclaim.

39.  Kelly denies the allegations of paragraph 39 of the Counterclaim.

40.  Kelly repeats and realleges as if set forth herein his responses to paragraphs 1 through 39 of the Counterclaim

41.  The allegations of paragraph 41 merely characterize the law, as to which no response is required.

00063471.DOC /

42.     Kelly denies the allegations of paragraph 42 of the Counterclaim.

43.     Kelly denies the allegations of paragraph 43 of the Counterclaim.

44.     Kelly repeats and realleges as if set forth herein his responses to paragraphs 1 through 43 of the Counterclaim

45.     Kelly denies the allegations of paragraph 45 of the Counterclaim.

46.     Kelly denies the allegations of paragraph 46 of the Counterclaim.

47.     Kelly denies the allegations of paragraph 47 of the Counterclaim.

48.     Kelly denies the allegations of paragraph 48 of the Counterclaim.

49.     Kelly denies the allegations of paragraph 49 of the Counterclaim.

### Second Affirmative Defense

Hugel has waived or is otherwise estopped to raise his claim.

### Third Affirmative Defense

Hugel's claim is barred by the doctrine of unclean hands.

### Fourth Affirmative Defense

Hugel's claim is barred by a failure or lack of consideration.

### Fifth Affirmative Defense

Hugel's claimed damages, if any (which damages Kelly expressly denies), are offset by amounts owed to Kelly.

### Sixth Affirmative Defense

Hugel's claim is barred by the statute of frauds.

### Seventh Affirmative Defense

Hugel's claim is barred by laches.

### Eighth Affirmative Defense

00063471.DOC /

-8-

Hugel's Counterclaim fails to state a claim upon which relief can be granted.

<u>Ninth Affirmative Defense</u>

The acts and conduct complained of in Hugel's Counterclaim did not occur primarily and substantially in the Commonwealth of Massachusetts within the meaning of G.L. c. 93A, §11.

BRIAN J. KELLY

By his attorneys,

*/s/ Thomas Paul Gorman*
Christopher A. Kenney, BBO#556511
Thomas Paul Gorman, BBO#204100
Sherin and Lodgen LLP
101 Federal Street
Boston, MA 02110
(617) 646-2000

Dated: May 6, 2005

-9-

## Certificate Of Service

The undersigned certifies that he served the foregoing by causing a copy thereof to be delivered this date by first-class mail, postage prepaid, to counsel of record:

Rheba Rutkowski, Esquire
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110

Dated: May 6, 2005